393 F.3d 120
 Rudolph KERN, And on behalf of the Estate of Erich Kern, Angela Kern, And on behalf of the Estate of Erich Kern, John S. Habblett, LTC (Ret.), and on behalf of the Estates of Jennifer Kirkpatrick Habblett Goodridge, Michael Jonclair Goodridge and Kyle William Goodridge, Suzanne K. Habblett, And on behalf of the Estates of Jennifer Kirkpatrick Habblett Goodridge, Michael Jonclair Goodridge and Kyle William Goodridge, Dick Baker, Dr., And on behalf of the Estate of Carrie Lynn Baker, Carol Baker, Dr., and on behalf of the Estate of Carrie Lynn Baker, Claire Goodridge, Individually as surviving father and as personal representative of the estate of Maj. Michael Clair Goodridge, deceased and individually as surviving grandfather and as personal representative of the estates of Michael Jonclair Goodridge, deceased and Kyle William Goodridge, deceased for himself and on behalf of decedents' estates, the distributes thereof and on behalf of decedents' surviving next of kin, including Julianne V. Goodridge, the surviving mother of Maj. Michael Clair Goodridge and surviving grandmother of Michael Jonclair Goodridge and Kyle William Goodridge, Plaintiffs-Appellees,
v.
SIEMENS CORPORATION, Siemens AG, Waagner-Biro Binder AG in Abwicklung, Waagner-Biro Binder Beteiligungs AG, WB Holding AG, Binder and Co. AG, Bosch Rexroth AG, Bosch Rexroth Corporation, and Omniglow Corporation Defendants-Appellants,
Leitner Lifts USA Inc., Leitner S.P.A., Osterreichische Elektrizitatswirtschafts AG, Swoboda Karoserie AG, Bauberdarfszentrum Stadlbauer AG, Gletscherbahnen Kaprun AG, ABC Corporations 1-10, John Does 1-10, Swoboda Karoserie-Und, Stahlbau Gmbh, Tauren Touristik, Gmbh, Thyssen Schachtbau, Gmbh, Thyssenkrupp AG, Intersport Austria Gmbh, Intersport International Corp., Intersport Marketing USA, Heitkamp, Inc., Gletscherbahnen Kaprun Aktiengesellschaft Defendants.
 No. 04-0957-CV.
 United States Court of Appeals, Second Circuit.
 Argued: November 2, 2004.
 Decided: December 20, 2004.
 
 Robert A. Swift, Kohn, Swift & Graf, Philadelphia, PA (Jay J. Rice, Diane E. Sammons, Randee M. Matloff, Nagel, Rice & Mazie, LLP, Livingston, NJ; Martin J. D'Urso, Hilary E. Cohen, Kohn, Swift & Graf, Philadelphia, PA; Kenneth P. Nolan, Christina M. Fry, Speiser, Krause, Nolan & Granito, New York, NY, of counsel), for Plaintiffs-Appellees.
 Christopher Landau (Thomas D. Yannucci, P.C., Brant W. Bishop, Susan Engel, of counsel), Kirkland & Ellis LLP, Washington, DC, for Defendants-Appellants Siemens Corporation and Siemens AG.
 Frederick W. Reif, Debra Tama, Riker Danzig Scherer Hyland & Perretti LLP, New York, NY, for Defendants-Appellants Waagner-Biro Binder AG in Abwicklung, Waagner-Biro Binder Beteiligungs AG, WB Holding AG, Binder and Co AG.
 Arthur J. Liederman, Dylan C. Braverman, Morrison, Mahoney & Miller, LLP, New York, NY, for Defendant-Appellant Bosch Rexroth AG.
 Arnd N. von Waldow, Reed Smith, LLP, Pittsburgh, PA; Paul P. Rooney, Reed Smith, LLP, New York, NY, for Defendant-Appellant Bosch Rexroth Corporation.
 E. Gordon Haesloop, Bartlett, McDonough, Bastone & Monaghan, LLP, Mineola, NY, for Defendant-Appellant Omniglow Corporation.
 Before: CARDAMONE, CABRANES, and SOTOMAYOR, Circuit Judges.
 JOSÉ A. CABRANES, Circuit Judge.
 
 
 1
 Defendants Siemens Corporation, Siemens AG, Waagner-Biro Binder AG in Abwicklung, Waagner-Biro Binder Beteiligungs AG, WB Holding AG, Binder and Co AG, Bosch Rexroth AG, Bosch Rexroth Corporation, and Omniglow Corporation (collectively, "defendants") appeal from the order of the United States District Court for the Southern District of New York (Shira A. Scheindlin, Judge), dated November 12, 2003, granting plaintiffs' motion for class certification. See In re Ski Train Fire in Kaprun, Austria on November 11, 2000, No. MDL 1428 (S.D.N.Y. Nov. 12, 2003). The District Court certified the class, pursuant to Fed.R.Civ.P. 23(b)(3) "for liability purposes only," as "limited to the claims of heirs, beneficiaries and personal representatives of individuals who died in the Ski Train Fire at Kaprun [,] Austria on November 11, 2003." Id. To join this class, the District Court's order further required that prospective members "opt in" by affirmatively consenting to inclusion. See In re Ski Train Fire in Kaprun, Austria on November 11, 2000, 220 F.R.D. 195, 199, 209-11 (S.D.N.Y.2003). Defendants argue, inter alia, that the District Court overstepped the bounds of Rule 23 by certifying an "opt in" class. We agree and therefore reverse the order of the District Court.
 
 BACKGROUND
 
 2
 The history of this case is reported in the opinion and order of the District Court, and we recount below only those facts relevant to the disposition of this appeal. See In re Ski Train Fire, 220 F.R.D. 195. On November 11, 2000, a funicular[1] train caught fire inside a tunnel near Kaprun, Austria; 155 passengers and crew members died in the inferno. Among the victims were ninety-two Austrians, thirty-seven Germans, ten Japanese, eight Americans, four Slovenians, two Dutchmen, a Briton, and a Czech. Plaintiffs, family members of the American victims, filed various lawsuits related to the Kaprun tragedy in several American courts. The Judicial Panel on Multidistrict Litigation transferred these cases to the United States District Court for the Southern District of New York "for coordinated or consolidated pretrial proceedings." See In re Ski Train Fire in Kaprun, Austria on November 11, 2000, 175 F.Supp.2d 1379, 1380 (J.P.M.L.2001).
 
 
 3
 In their amended complaint before the District Court, plaintiffs sought damages, as well as declaratory and injunctive relief, from various entities, alleging that the train and tunnel were improperly designed, constructed, and maintained, as well as negligently operated and promoted. Plaintiffs also alleged, inter alia, that certain defendants fraudulently misrepresented the safety of the train and the tunnel and intentionally inflicted emotional distress. Most significantly for the purposes of this appeal, plaintiffs brought their claims "on their own behalf, and on behalf of a class of heirs and representatives of victims" of the Kaprun tragedy "who consent in being included as members of the class." If certified, the plaintiffs' class would consequently include the heirs and beneficiaries of foreign victims. Plaintiffs asked the District Court to certify this class pursuant to Rule 23(b)(2) and 23(b)(3).[2]
 
 
 4
 In an amended order dated October 14, 2003, the District Court certified plaintiffs' class pursuant to Fed.R.Civ.P. 23(b)(3),[3] to resolve "liability issues only," rather than damages. In re Ski Train Fire, 220 F.R.D. at 199. The class would consist of "all heirs, beneficiaries and personal representatives of all individuals who died in the fire who consent to inclusion." Id. (internal quotation marks and emphasis omitted). "Because participation in the class requires prospective members to take affirmative action" by first consenting "to be bound by the judgment," the District Court certified "an `opt-in' class, as opposed to the traditional Rule 23(b)(3) `opt-out' class." Id. at 209, 211. Defendants[4] now appeal the District Court's certification decision.
 
 
 5
 Defendants challenge the District Court's decision on four grounds. First, they argue that Rule 23 does not permit certification of a class with an "opt in" provision. Second, they argue that a class of "all heirs, beneficiaries and personal representatives" is unmanageable because identifying class members would require an individualized inquiry into each decedent's estate. Third, defendants challenge the suitability of the class action mechanism for resolving issues of legal liability in an accident with mass fatalities. Finally, defendants argue that the District Court erred by certifying a class to pursue claims of fraud and intentional infliction of emotional distress, since such claims may require individual determinations.
 
 DISCUSSION
 I. Standard of Review
 
 6
 We review a district court's decision to certify a class for abuse of discretion. See, e.g., Parker v. Time Warner Entm't Co., 331 F.3d 13, 18 (2d Cir.2003). "A district court `abuses' or `exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision — though not necessarily the product of a legal error or a clearly erroneous factual finding — cannot be located within the range of permissible decisions." Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 (2d Cir.2001) (internal citations omitted).
 
 II. An "Opt in" Class
 
 7
 We first consider whether the District Court erred by certifying what it described as an "opt in" class. Rule 23(c) contains a so-called "opt out" requirement, mandating that members of a class certified under Rule 23(b)(3) be afforded an opportunity to "request exclusion" from that class.[5] The language of Rule 23 does not, however, require members of any class affirmatively to opt into membership. Nor is such an "opt in" provision required by due process considerations. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) ("We reject [the] contention that the Due Process Clause of the Fourteenth Amendment requires that absent plaintiffs affirmatively `opt in' to the class, rather than be deemed members of the class if they do not `opt out.'").
 
 
 8
 Not only is an "opt in" provision not required, but substantial legal authority supports the view that by adding the "opt out" requirement to Rule 23 in the 1966 amendments, Congress prohibited"opt in" provisions by implication. Professor Benjamin Kaplan of Harvard Law School, who served as Reporter of the Advisory Committee on Civil Rules from 1960 to 1966, and later as a Justice of the Supreme Judicial Court of Massachusetts, explained that the Committee rejected the suggestion "that the judgment in a (b)(3) class action, instead of covering by its terms all class members who do not opt out, should embrace only those individuals who in response to notice affirmatively signify their desire to be included...." Benjamin Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv. L.Rev. 356, 397 (1967). He elaborated the rationale of the Committee's decision:
 
 
 9
 [R]equiring the individuals affirmatively to request inclusion in the lawsuit would result in freezing out the claims of people — especially small claims held by small people — who for one reason or another, ignorance, timidity, unfamiliarity with business or legal matters, will simply not take the affirmative step. The moral justification for treating such people as null quantities is questionable. For them the class action serves something like the function of an administrative proceeding where scattered individual interests are represented by the Government. In the circumstances delineated in subdivision (b)(3), it seems fair for the silent to be considered as part of the class. Otherwise the (b)(3) type would become a class action which was not that at all — a prime point of discontent with [the pre-1966 version of Rule 23].
 
 
 10
 Id. at 397-98, cited with approval in Shutts, 472 U.S. at 813 n. 4, 105 S.Ct. 2965. Courts have generally echoed Justice Kaplan's view that "opt in" provisions are contrary to Rule 23. See Clark v. Universal Builders, Inc., 501 F.2d 324, 340 (7th Cir.1974) ("[T]he requirement of an affirmative request for inclusion in the class is contrary to the express language of Rule 23(c)(2)(B) ...."); Enter. Wall Paper Mfg. Co. v. Bodman, 85 F.R.D. 325, 327 (S.D.N.Y.1980) ("Rule 23(c)(2)(B) calls for a notice that enables prospective members to opt-out, in language strongly suggesting the impropriety of opt-in requirements (i.e. `the judgment, whether favorable or not, will include all members who do not request exclusion'). This reading of the rule has been accepted by most courts essentially for the reasons stated by Justice Kaplan....").[6]
 
 
 11
 Admittedly, we have never squarely held that Rule 23 prohibits certification of an "opt in" class. This is unsurprising since it appears, as the District Court concedes, 220 F.R.D. at 210, no other federal court has explicitly certified an "opt in" class. It is more common that courts have considered whether mandatory class-member questionnaires are permissible during the discovery stage of a class action. Some courts have held that such questionnaires are impermissible — precisely because they may constitute a de facto"opt in" provision. See Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1557 (11th Cir.1986) ("Used in a Rule 23(b)(2) setting, a discovery order threatening dismissal for non-compliance amounts to no more than an affirmative `opt-in' device — that is, it requires passive class members to take positive action to stay in the suit."); McCarthy v. Paine Webber Group, Inc., 164 F.R.D. 309, 313 (D.Conn.1995) ("Dismissal of an absent class member's claims as sanctions for failure to answer a questionnaire is contrary to the opt-out policy of Rule 23."). Likewise, courts have hesitated to require class members to file proofs of claim before a liability determination because such a provision resembles an "opt in" procedure. See Enter. Wall Paper, 85 F.R.D. at 327; Abulaban v. R.W. Pressprich & Co., 51 F.R.D. 496, 497 (S.D.N.Y.1971) ("Failure to file any document in the nature of an inclusionary request should not, in the initial stages of the litigation, preclude a person from being considered a member of the class."); see also 2-14A James Wm. Moore, et al., Moore's Manual — Federal Practice and Procedure § 14A.23[5][b] (2004) ("[A] court may generally not require class members to file a proof of claim form before a liability determination, because courts have generally found the use of such a form to be an improper opt-in requirement in violation of Rule 23(c)(2), at least as a prerequisite to trial."); 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1787, at 216 (2d ed.1986) (noting that "some courts have refused to authorize the use of a proof-of-claim form" because such a form may constitute an "opt in" provision) (internal citation omitted). In short, we find scant support for the proposition that a court could ever certify a class with an "opt in" provision during the liability stage of the litigation.
 
 
 12
 Despite substantial authority indicating that Rule 23 precludes certification of "opt in" classes, the District Court relied on a handful of cases to announce a new rule of civil procedure, namely that "opt in" classes are not only permissible, but may in fact "be necessary in certain circumstances." In re Ski Train Fire, 220 F.R.D. at 210 (citing Robinson v. Union Carbide Corp., 544 F.2d 1258, 1260-61 (5th Cir.1977), and In re Crazy Eddie Sec. Litig., 135 F.R.D. 39, 42 (E.D.N.Y.1991)). The District Court reasoned that an "opt in" class is "necessary" in this case because plaintiffs sought to certify a class whose prospective members are defined by their willingness "to take [the] affirmative action" of "consent[ing] to be bound by the judgment." Id. at 209. The District Court elaborated that "[a]n `opt-in' class is necessary here because it would be unfair to presumptively include members in a class for which membership depends on a waiver of a right." Id. at 209-10. Acknowledging the novelty of certifying an "opt in" class under Rule 23, the District Court also indicated that its authority to do so could be derived from other sources. One such source was an analogy to the Fair Labor Standards Act (FLSA), which provides for judgments that "bind [ ] only those who affirmatively desire to be class members." Id. at 210. Another asserted source was the District Court's "equitable powers." Id.
 
 
 13
 The District Court's certification of an "opt in" class in this case was error. Zervos, 252 F.3d at 169 (noting that legal error is a species of "abuse of discretion"). First, the two cases on which the District Court relied hardly provide clear guidance on the issue. The only support to be found for the District Court's application of Robinson is a single sentence — and then only if taken out of context. The Court of Appeals for the Fifth Circuit stated that "there are some class actions where it is necessary for class members who do not opt out to take some affirmative action as a condition of ultimate recovery," 544 F.2d at 1260 (internal quotation marks omitted), but then immediately continued: "The key word here is `ultimate.' ... Although there may be some ... actions in which unnamed individual plaintiffs will have to come forward to establish their entitlement to portions of the recovery, such requirement should not be imposed upon them until necessary for adjudication.... Opting in was not necessary before the determination of liability." Id. at 1260-61 (emphasis added). In other words, in relying on Robinson, the District Court ignored the critical difference between, on the one hand, requiring an individual to take affirmative action to join a class for liability determination purposes and, on the other hand, requiring a class member to take action (such as filling out a claim form) in order to obtain the ultimate relief.[7] The former is an "opt in" provision and the latter is not, since a class member who fails to obtain ultimate relief because she did not fill out a claim form is nonetheless still a class member. Judge Wisdom's concurring opinion in Robinson explained this distinction: "The supplemental notice in this case does not violate the amendment to Rule 23(c)(2) because it does not require members to opt-into the class action in order to be bound by it.... The supplemental notice, directed only to those members who had not excluded themselves, merely conditioned the receipt of individualized non-injunctive relief on the submission and proof of the claim for such relief." Id. at 1262 (Wisdom, J., concurring); cf. 7B Wright, Miller & Kane § 1787, at 217 (recognizing that class "members should not be barred from asserting their rights simply because they failed to demonstrate at the outset of the action that their claims had some validity," even though, "once defendant's liability is established, the court may be justified in ... requiring class members to file statements of their claims and barring those not presented at that time").
 
 
 14
 Crazy Eddie is likewise unavailing. In that case, a district court denied a request to send an information statement to putative class members, citing sources that counsel against certifying "opt in" classes. 135 F.R.D. at 42. Then, in a brief unsupported comment, the court added: "Circumstances may require a court to depart from the spirit of the Federal Rules and impose what amounts to an opt in requirement. Those special circumstances are not present in this case." Id. The Crazy Eddie court offered no guidance, however, on circumstances when "opt in" classes may prove appropriate. It can thus hardly sustain the weight of the District Court's unprecedented legal conclusions here.
 
 
 15
 Second, even assuming for the argument that Rule 23 permits courts to certify "opt in" classes when "certain circumstances" prove them "necessary," In re Ski Train Fire, 220 F.R.D. at 210, the District Court clearly erred in defining such circumstances. According to the Court, the "opt in" provision was rendered necessary in this case by plaintiffs' decision to define class membership by reference to affirmative conduct — their affirmative "consent to being included." The "opt in" provision was not, therefore, necessary in any objective sense; rather, it was necessary only because plaintiffs defined it into necessity. The District Court's approach would thus authorize "opt in" classes well beyond the narrow confines of current Rule 23 jurisprudence by rubber-stamping plaintiffs'"opt in" requests.
 
 
 16
 On appeal, plaintiffs suggest three additional reasons why an "opt in" class "was appropriate in this action." Appellees' Br. at 14. "First, non-American Class members must accept the risk that, if they are required to litigate damages in their own countries [and if these foreign courts decline to recognize the liability judgment of American courts], an American judgment may only be evidence of a Defendant's liability." Id. This argument has essentially the same flaw as the District Court's argument — the purported necessity of the "opt in" provision is a function not of the circumstances of this case, but of the particular litigation strategy that plaintiffs chose to pursue. "Second, the opt-in procedure avoided any question as to whether Class members received adequate notice — another issue likely to arise in international class actions"; and "[t]hird, the opt-in procedure assured that absent Class members desired to be represented by Class Counsel — a concern that often arises in the context of serious personal injury claims." Id. Whatever the merits of these two arguments, they would expand the use of "opt in" provisions far wider than the present Rule 23 jurisprudence conceivably contemplates. After all, adequate notice and satisfactory class representation are salient issues in most class actions.
 
 
 17
 In short, we cannot envisage any circumstances when Rule 23 would authorize an "opt in" class in the liability stage of a litigation. But even if circumstances necessitating the certification of such a class could be shown, neither the District Court nor plaintiffs have done so in the case before us.
 
 
 18
 Nor does the District Court's analogy to the FLSA provide support for this novel reconstruction of Rule 23. The Court is correct that, unlike Rule 23, the FLSA provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b); see also De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 306 (3d Cir.2003) ("The principal difference between FLSA class actions and Fed.R.Civ.P. 23 class actions is that prospective plaintiffs under the FLSA must consent to join the class."). The District Court, however, was asked to certify a class under Rule 23, not under the FLSA. See Grayson v. K Mart Corp., 79 F.3d 1086, 1096 n. 12 (11th Cir.1996) ("[I]t is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure."). If anything, the language of the FLSA suggests that, should Congress seek to authorize certification of "opt in" classes, it can do so with unambiguous language. All parties concede that Rule 23 contains no such language.
 
 
 19
 Lastly, the District Court erroneously invoked its "equitable powers." That Rule 23 does not authorize "opt in" classes is "immaterial," the Court held, because courts have "equitable powers" to certify such classes. In re Ski Train Fire, 220 F.R.D. at 210. Contrary to the District Court's assertion, Rule 23 offers the exclusive route to forming a class action. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("[O]f overriding importance, courts must be mindful that [Rule 23] as now composed sets the requirements they are bound to enforce. Federal Rules take effect after an extensive deliberative process involving many reviewers.... The text of a rule thus proposed and reviewed limits judicial inventiveness."); In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 135 (2d Cir.2001) (stating that "a trial court must conduct a `rigorous analysis' to ensure that the prerequisites of Rule 23 have been satisfied before certifying a class"). Any putative "opt in" class, assuming such classes are permitted at all, must still satisfy the requirements of Rule 23. Plaintiffs have not demonstrated that the facts of this case permit the certification of an "opt in" class that comports with Rule 23.
 
 
 20
 We therefore hold that the District Court erred in granting plaintiffs' request to certify a class with an "opt in" provision. Since plaintiffs' amended complaint defined prospective members by reference to their affirmative consent to inclusion in the class — and since the District Court concluded that the "opt in" feature is "necessary" to effectuate plaintiffs' class certification request, In re Ski Train Fire, 220 F.R.D. at 209-10 — we remand the cause to the District Court with instructions to enter an order denying class certification.[8] Accordingly, we need not reach defendants' other arguments purporting to show why class certification was inappropriate in this case.
 
 CONCLUSION
 
 21
 For the reasons stated above, we hold that the District Court erred by certifying an "opt in" class pursuant to Rule 23(b)(3). The judgment of the District Court is therefore reversed, and the cause is remanded to the District Court with instructions to enter an order denying plaintiffs' motion for class certification.
 
 
 
 Notes:
 
 
 [1]
 A funicular railway is a cable railway ascending a mountain, typically by partly or wholly counterbalancing the weight of the ascending car by the weight of the descending carSee Merriam-Webster's Third New International Dictionary Unabridged (1976), available at http:// mwu.eb.com/mwu. According to one writer in The New York Times, the "definitive" online source for information about funicular transportation is the magazine Funimag, which one can find at http://www.funimag.com. Joyce Cohen, Glory Days of the Incline, Before the Decline, N.Y. Times, Mar. 23, 2000, at G8.
 
 
 [2]
 Fed.R.Civ.P. 23 provides, in part:
 (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if
 (1) the class is so numerous that joinder of all members is impracticable,
 (2) there are questions of law or fact common to the class,
 (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
 (4) the representative parties will fairly and adequately protect the interests of the class.
 (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
 (1) the prosecution of separate actions by or against individual members of the class would create a risk of
 (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
 (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
 (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
 (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
 (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
 (D) the difficulties likely to be encountered in the management of a class action.
 
 
 [3]
 The District Court denied class certification pursuant to Rule 23(b)(2)See In re Ski Train Fire, 220 F.R.D. at 211-12.
 
 
 [4]
 On October 8, 2004, the District Court dismissed four of the defendants from the underlying action for lack of personal jurisdiction, leaving only Siemens AG, Siemens Corporation, Bosch Rexroth Aktiengesellschaft, Bosch Rexroth Corporation, and Omniglow CorporationSee In re Ski Train Fire in Kaprun, Austria on November 11, 2000, 342 F.Supp.2d 207 (S.D.N.Y.2004).
 
 
 [5]
 Rule 23(c)(2)(B) provides, in relevant part, that notice to members of "any class certified under Rule 23(b)(3) ... must concisely and clearly state in plain, easily understood language... that the court will exclude from the class any member who requests exclusion...."
 
 
 [6]
 Eminent authorities on the Rules agreeSee 5 James Wm. Moore, et al., Moore's Federal Practice § 23.104[2][a][ii] (3d ed. 2004) ("There is no authority for establishing `opt-in' classes in which the class members must take action to be included in the class. Indeed, courts that have considered `opt-in' procedures have rejected them as contrary to Rule 23."); 2-14A James Wm. Moore, et al., Moore's Manual — Federal Practice and Procedure § 14A.23[5][f] (2004) ("Federal class action procedures do not provide for `opt-in' classes in which the class members need to take action to be included in the class. Therefore, a class member may do nothing and rely on the class counsel and class representative to conduct the action, in which case the class member is bound by the judgment.") (internal citations omitted); 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1787, at 214 (2d ed. 1986) ("The ability of a member to secure the benefits of a successful termination of the action without affirmatively pressing his own claim is particularly important because it assures that small claimants who would be unable to protect their rights through separate suits can take advantage of the judgment in the class action without the burden of actually participating. It was for this reason that the Advisory Committee specifically rejected the notion of requiring absent class members to opt-into the action to secure its benefits.") (internal citations omitted); id. at 216 (stating that "bar[ring] the claims of the passive members unless within a reasonable period they file a brief statement of their intent to prove damages" would have "the effect of obliging absent class members to opt-in, [which] is directly contrary to the philosophy of Rule 23(c)(2)") (internal citations and quotation marks omitted).
 
 
 [7]
 Plaintiffs fall into the same trap in this appeal. They principally rely on cases — for example,Kyriazi v. Western Electric Co., 647 F.2d 388 (3d Cir.1981) — where courts required class members to take affirmative action to obtain ultimate relief. See id. at 392 ("The proof of claim procedure employed by the district court was not novel. The consensus among courts and commentators is that such an inquiry after a judgment establishing liability is not prejudicial and can serve as an essential aid in the efficient control of a complex class action suit.") (emphasis added). By contrast, in the instant case, the District Court would require absent plaintiffs to take affirmative action in order to join a class formed "with respect to liability issues only." In re Ski Train Fire, 220 F.R.D. at 199 (emphasis omitted).
 
 
 [8]
 We also have significant doubts whether without the "opt in" provision — or perhaps even with that provision — plaintiffs' class is "superior to other available methods for the fair and efficient adjudication of the controversy," as Rule 23(b)(3) would require it to be. The District Court observed that "non-American plaintiffs will be unable to bring their damages actions against the foreign defendants in the United States because there is no diversity jurisdiction over a foreign plaintiff suing a foreign defendant in the United States."In re Ski Train Fire, 220 F.R.D. at 207 n. 19. Austrian courts, where such damages actions would likely be resolved, are, however, "not bound by judgments of American courts." Id. at 209. In light of these conclusions, defendants understandably argued that a class action in American courts on behalf of foreign victims would be merely advisory and therefore not superior to other methods of adjudication. The District Court declined to credit this concern, arguing that
 plaintiffs have ameliorated the potential preclusion problems by conditioning participation in this class action on each class member's agreement to be bound by a final determination on the merits as to liability. Therefore, even if plaintiffs ultimately are disappointed with the result of the United States litigation, they will be precluded from re-litigating their claims against these defendants in Austria or any other jurisdiction. Thus, a verdict of no liability from a United States court will give defendants complete finality.
 Id. at 209. Thus, the District Court relied, at least in part, on the "opt in" provision of the plaintiffs' class when it certified that class under Rule 23(b)(3). Since we now hold that the "opt in" provision here violated Rule 23, we need not decide whether the District Court correctly found that the provision resolved concerns about the asserted inefficiency of the proposed class.